# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
### No. 19-278V
UNPUBLISHED

| | |
|---|---|
| CHRISTOPHER DAWSON, | Chief Special Master Corcoran |
| Petitioner, | Filed: November 4, 2021 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Entitlement to Compensation; Table Injury; Influneza ("Flu") Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*Jerome A. Konkel, Samster Konkel and Safran, Wauwatosa, WI, for Petitioner.*

*Claudia Barnes Gangi, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT

On February 21, 2019, Christopher Dawson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[1] (the "Vaccine Act"), alleging that he suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to him on December 28, 2016. Petition, ECF No. 1 at ¶¶13-14. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below, I find that Petitioner is entitled compensation for his SIRVA**.**

## I.     Relevant Procedural History

As noted above, the case was initiated in February 2019. On September 8, 2020, Respondent filed his Rule 4(c) Report. ECF No. 25. Respondent specifically maintained that Petitioner had not established that he suffered limited range of motion after the administration of the flu vaccine on December 28, 2016, and thus does not meet the

---

[1] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

criteria to establish a Table SIRVA case. *Id.* at 6 (citing 42 C.F.R. § 100.3(c)(10)). Respondent further asserted that Petitioner had not provided evidence sufficient to establish causation-in-fact under the relevant standard. *Id.* at 4-6.

On October 9, 2020, I ordered to Petitioner to file a Response the Rule 4(c) Report, and Show Cause why his SIRVA Table case should not be dismissed (ECF No. 26), and he did so on November 20, 2020. ECF No. 27. On November 24, 2020, Respondent filed a reply to Petitioner's response. ECF No. 28. This matter is now ripe for my ruling on Petitioner's entitlement to compensation.

## II.   Factual Findings and Ruling on Entitlement

### A.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.,* 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[2] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation

---

[2] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The Vaccine Injury Table's qualifications and aids to interpretation ("QAI") for SIRVA provide as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). **A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following**:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10)(emphasis added).

### B. Findings of Fact Regarding Reduced Range of Motion

Respondent's sole objection in this case is that Petitioner cannot establish he suffered reduced or limited range of motion as part of his SIRVA - a Table QAI requirement.

As a preliminary matter, I find that it is not readily apparent that the QAI to establish a Table SIRVA injury *requires* that a petitioner establish that he suffered limited or reduced range of motion. The QAI for SIRVA discusses reduced or limited range of motion in two places. In the first instance, it states that "SIRVA manifests as shoulder pain *and* limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm." 42 C.F.R. § 100.3(c)(10) (emphasis added). This phrasing supports Respondent's argument that range of motion limits must be demonstrated (although there is some ambiguity in the language). Next, the SIRVA QAI provides that "[a] vaccine recipient shall be considered to have suffered SIRVA if such recipient *manifests* all of the following: . . . . (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; . . . ." *Id.* This subsection arguably could be understood only to define the *locus* of range of motion issues ("the shoulder in which the intramuscular vaccine was administered"), and not that proof of range of motion limits is a specific injury element.

Because of these language ambiguities, whether petitioners are in fact expressly required to establish reduced range of motion has been questioned. *See, Portee v. Sec'y of Health & Hum. Servs*., No. 16-1552V, 2018 WL 5284599, at *11 (Fed. Cl. Sept. 14, 2018) (finding the "medical records show that, in this case, petitioner suffered from both pain and limited ROM. There is preponderant evidence to show petitioner has satisfied what *could be deemed an additional requirement in the QAI*")(emphasis added). To be sure, if a petitioner *does* exhibit reduced or limited range of motion under the QAI to establish a Table SIRVA any reduced range of motion must be "limited to the shoulder in which the intramuscular vaccine was administered." *Id.*

Despite the above, I find that Petitioner did manifest reduced or limited range of motion in his left shoulder. I make these findings after a complete review of the record to include all medical records, affidavits, testimony, Respondent's Rule 4 report, the parties briefing, and additional evidence filed. Specifically, I note:

- On December 28, 2016, Petitioner received an intramuscular flu vaccination in his left deltoid. Ex. 3 at 5, 14, 194-95. At that time Petitioner resided in the Waupan Correctional Institute in Waupan, Wisconsin.

- On January 6, 2017, Petitioner was seen in the Health Services Unit ("HSU") following a health service request ("HSR") made on January 1, 2017 for "pain to L[eft] deltoid [following] flu shot." Ex. 3 at 14. On examination, Petitioner exhibited full range of motion and was assessed with "altered comforted [related to] musculoskeletal pain." *Id.* Petitioner was advised to treat with a hot compress and to continue to use arm as "nonuse can potentially cause more 'tightness' in muscle." *Id.*

- On January 20, 2017, Petitioner was seen at the HSU for "[left] shoulder pain," he reported that his shoulder was not improving despite using heat and exercising. *Id.* On examination, Petitioner exhibited full range of motion of his left shoulder and arm and was again assessed with "altered comforted [related to] musculoskeletal pain." *Id.* Petitioner was advised to continue his treatment plan of utilizing "heat" and "ROM" exercises until "MD" follow-up. *Id.*

- On April 20, 2017, Petitioner was seen again at the HSU for complaints of "pain and 'fatigue' in deltoid area [of his] L[eft] shoulder since getting flu shot [on] 12/28." *Id.* at 13. It was noted that petitioner had full range of motion, and that he was able to perform pushups and play handball. On examination Petitioner's left shoulder was tender over the mid-deltoid and at the AC joint, he was found to have "good" range of motion. *Id.* Physical therapy ("PT") and an x-ray was for Petitioner's left shoulder was ordered. *Id.* at 40.

- On June 29, 2017, Petitioner was seen at the HSU and reported his left shoulder "unchanged," that he had not begun PT, and that naproxen was "not helping." *Id.* at 10. On examination he was found to have full range of motion and to be "tender" in the subacromial space. *Id.* He was assessed with bursitis of the left shoulder and a steroid injection was planned. *Id.* The steroid injection was administered on July 13, 2017. *Id.*

- On September 29, 2017, Petitioner reported to HSU for left shoulder pain. "Objective" findings included "[f]ull ROM bilateral arms + R[ight] shoulder" with complaints of "pain + limited ROM [with] L[eft] shoulder in upward mot[ion]." Ex. 3 at 11. A musculoskeletal assessment indicated his "problem location" was noted to be his left shoulder and a box was checked indicating "ROM limitations." *Id.* at 12.

- On October 31, 2017, Petitioner was seen again at HSU and reported that his left shoulder was "now better" and on exam he was found to have "good ROM." Ex. 3 at 9.

5

- On November 8, 2017, Petitioner received a steroid injection in his left shoulder "for SIRVA." Ex. 3 at 9.

- On December 12, 2017, Petitioner was seen at HSU and reported his left shoulder was "much improved" and that he had full "ROM again, but [his shoulder] still hurts [with] certain movements." *Id*. On exam he was found to have "good ROM and strength." *Id*.

- On January 23, 2018, an MRI was ordered of Petitioner's left shoulder for "pain and ↓ ROM > 1 year." Ex. 3 at 37.

- On May 30, 2018, an MRI was conducted on Petitioner's left shoulder, the reason provided for the MRI exam was "left shoulder pain and decreased range of motion." Ex. 5 at 9. The MRI impression was "no internal derangement of the left shoulder." *Id*.

- On June 28, 2018, Petitioner was seen by Dr. Jeffrey C. Manlove. Dr. Manlove indicated that Petitioner's left shoulder pain began after "he received a flu vaccination and initially he had extremely limited range of motion due to pain." Ex. 4 at 45. However, Petitioner reported "he can now manage full range of motion" and Dr. Manlove noted "I was confident that it's on its way back to normal." *Id*. On examination, Dr. Manlove found that Petitioner has "full range of motion of left shoulder" with "no tenderness on palpitation." *Id*. Dr. Manlove assessed Petitioner with "SIRVA left shoulder following flu shot one [and a] half years ago. This now appears to be resolving and he no longer has any functional impairment." *Id*.

The aforementioned medical records preponderantly establish that Petitioner manifested both pain and reduced range of motion in his left shoulder, and that this pain and reduced range of motion were limited to his left shoulder.

Admittedly, it is the case that on numerous occasions Petitioner manifested good or full range of motion of the left shoulder. However, the contemporaneous medical records (cited above) also document both subjective and objective evidence to the contrary. In particular, on September 29, 2017, Petitioner subjectively reported to HSU complaints of "pain + limited ROM [with] L[eft] shoulder in upward mot[ion]." Ex. 3 at 11. HSU reported that Petitioner had "[f]ull ROM bilateral arms + *R[ight]* shoulder." *Id*. (emphasis added). This same record contains an objective "musculoskeletal" assessment which indicated that Petitioner's "problem location" was noted to be his left shoulder and a box was checked indicating "ROM limitations." *Id*. at 12.

Further, objective evidence is found in Petitioner's MRI order and report, both of which document that Petitioner required a left shoulder MRI due to his left shoulder pain and decreased range of motion. Ex. 3 at 37, Ex. 5 at 9. Respondent apparently dismisses this evidence because it is contained in records generated more than one year after Petitioner's vaccination. ECF No. 27 at 3. However, assuming that there is a requirement that a Petitioner must manifest reduced range of motion to meet the Table criteria for SIRVA, no time period is set forth in which Petitioner must manifest reduced range of motion.

### C.  Ruling on Entitlement

As discussed above, Respondent's only objection to Petitioner's Table SIRVA claim is that Petitioner did not establish that he suffered reduced or limited range of motion as required by the Table QAI for SIRVA. However, as further discussed above, I have found that Petitioner has established that he manifested reduced or limited range of motion of the left shoulder.

Further, I find based upon my complete review of the record in this case, that Petitioner has established fully satisfied all Table requirements to establish SIRVA pursuant to 42 C.F.R. § 100.3(c)(10) (the QAI) and 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the flu vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA and is entitled to a presumption of causation.

Additionally, I find based upon my review of the record, and Respondent's lack of objection, that Petitioner has provided preponderant evidence to establish the additional requirements of Vaccine Act under Section 11(c), i.e. receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). Accordingly, I find that Petitioner is entitled to compensation for his injury.

### III.    Conclusion

As indicated above, I have specifically found that Petitioner has demonstrated preponderant evidence of entitlement to compensation under the Vaccine Act. I therefore find that Petitioner is entitled to compensation in this case.

A Damages Order will follow.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master